UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

|  |  |  |
|---|---|---|
| CANDLEWOOD PARTNERS, LLC, | : | CASE NO. 1:23-cv-1351 |
|  | : |  |
|  | : | ORDER |
| Plaintiff, | : | [Resolving Docs. 10, 14] |
|  | : |  |
| v. | : |  |
|  | : |  |
| STRATOS FUEL, INC. | : |  |
|  | : |  |
| Defendant. | : |  |

---

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Candlewood Partners, LLC, an advisory firm, sues Defendant Stratos Fuel, Inc., a former client, to enforce a settlement agreement from prior litigation.[1]  Defendant Stratos acknowledges the settlement agreement but disagrees over what the settlement agreement requires and disagrees that Stratos has failed to comply with the settlement agreement.

The parties' current dispute centers on whether settlement agreement Section 1(a) requires Stratos to pay Candlewood $1.2 million dollars after eighteen months, regardless of whether Stratos has completed a successful capital raise.

Stratos's motion to partially dismiss and Candlewood's motion for judgment on the pleadings both argue that Section 1(a) is unambiguous and should be interpreted to conform with their respective interpretations.  Candlewood says that Stratos has an absolute obligation to make the settlement payment, while Stratos says that the payment is contingent upon Stratos raising capital funds, which Stratos says has not yet occurred.

---

[1] *See Candlewood Partners, LLC v. Stratos Fuel, Inc., et al.*, Case No. 1:21-cv-01920 (N.D. Ohio).

Case No. 1:23-cv-01351
GWIN, J.

For the following reasons, the Court **DENIES** both Stratos's and Candlewood's motions.

## I.   BACKGROUND[2]

Plaintiff Candlewood Partners, LLC runs an Ohio limited liability advisory firm that advises businesses in obtaining financing.[3] Defendant Stratos Fuel, Inc. operates a California-based company aimed at developing North America renewable hydrogen energy plants.[4] In 2017, Stratos hired Candlewood to help Stratos find financing for Stratos's first North American renewable hydrogen plant.[5]

The parties first memorialized their agreement in a May 5, 2017 engagement letter.[6] Initially, the engagement required Candlewood to identify and obtain financing sources for Stratos.[7] In return for Candlewood's services helping to obtain financing, Stratos agreed to pay Candlewood a fee, contingent upon Stratos completing a successful capital raise.[8]

Candlewood failed to find financing sources for Stratos, and Candlewood did not receive any advisory fees.[9] After Candlewood's efforts to raise capital failed, the parties twice amended the engagement letter, on March 26, 2018, and on March 24, 2020. The amendments continued Candlewood's capital-raising advisory services, but increased Candlewood's contingent financial interests and gave Candlewood a board seat.[10]

---

[2] The Court takes as true all well-pleaded factual allegations when deciding a Rule 12(c) and Rule 12(b)(6) motions, and nothing in this factual background section should be construed as the Court's findings of fact.
[3] Doc. 8, ¶¶ 3-5.
[4] Doc. 8, ¶¶ 4-8.
[5] *Id.*, ¶ 7.
[6] *See* Doc. 8-1.
[7] *Id.*, ¶ 8.
[8] Doc. 1-1, PageID #: 11.
[9] Doc. 8, ¶ 10, Doc. 11, ¶ 10.
[10] Doc. 8, ¶¶ 12-13.; Doc. 8-1, PageID #: 72.

Case No. 1:23-cv-01351
GWIN, J.

The parties disagree on who caused Candlewood's inability to raise the financing it agreed to find. Candlewood says it made its best efforts but that Stratos lacked a reasonable business plan.[11] Stratos maintains that Candlewood failed to identify equity investors and leaned on Stratos to pursue an ill-advised strategy to raise financing through debt, not equity.[12]

The parties' relationship soured. On August 13, 2021, Stratos CEO Peter Jeffe sent Candlewood an email with proposed changes to the terms of Stratos's and Candlewood's agreement.[13] Under those terms, Candlewood would lose its board seat and be reduced to a minority equity holder.

Candlewood refused the proposed changes and Candlewood sued Stratos. On October 11, 2021, Candlewood sued Stratos and Jeffe alleging breach of the amended engagement letters' terms and other related claims.[14] The parties quickly settled this first lawsuit. On December 9, 2021, Candlewood dismissed the first lawsuit without prejudice under Rule 41(a)(1)(A)(i). The parties reported that the case was dismissed after they reached a settlement agreement.[15]

Candlewood now sues to arguably enforce the Stratos settlement agreement. Both parties point to settlement agreement Section 1(a) as central to their dispute. In relevant part, Section 1(a) of the settlement agreement says that:

> "Stratos will . . . [p]ay to Candlewood the amount of $1,200,000 (one million two hundred thousand dollars) within ten (10) business days of the closing of the first round of capital raised by Stratos (the "Closing"), which shall occur no later than eighteen (18) months after the Effective Date [December 9, 2021],

---

[11] Doc. 8, ¶¶ 9-10.
[12] Doc. 11, ¶¶ 14-20.
[13] Doc. 8, ¶ 25; Doc. 11, ¶ 28.
[14] *Candlewood Partners*, Case No. 1:21-cv-01920; Doc. 8, ¶ 29; Doc. 11, ¶ 29.
[15] Doc. 8, ¶ 30; Doc. 11, ¶ 30.

Case No. 1:23-cv-01351
GWIN, J.

by wire transfer to the specified account by Candlewood in writing (the "Settlement Payment").

Candlewood brings one count for breach of contract. Candlewood says that Section 1(a) requires Stratos to pay Candlewood the $1.2 million settlement payment within eighteen months, and that Stratos's failure to do so breaches the settlement agreement.[16]

Defendant Stratos moves to partially dismiss Candlewood's complaint.[17] With its motion, Stratos says the settlement agreement should be interpreted so that the $1.2 million settlement payment only becomes owing after the first round of a capital raise be received. Defendant Stratos says no first round of any capital raise has been received. Candlewood has filed a competing motion for judgment on the pleadings.[18]

These motions are now before the Court.

## II.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[19] The plausibility requirement is not a "probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully."[20]

And, on a motion for judgment on the pleadings under Rule 12(c), the Court uses the same standard as a Rule 12(b)(6).[21] But "[w]hen the plaintiff, as opposed to the defendant, moves for judgment on the pleadings," instead of asking whether the complaint states a

---

[16] Doc. 8, ¶ 34.
[17] Doc. 10-1. Candlewood opposed, *see* Doc. 13, and Stratos replied, *see* Doc. 17.
[18] Doc. 14. Stratos opposed, *See* Doc. 18, and Candlewood replied, *see* Doc. 22.
[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).
[20] *Id.*
[21] *See Tucker v. Middleburg–Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).

Case No. 1:23-cv-01351
GWIN, J.

facially plausible claim, courts ask "whether the plaintiff's petition, stripped of those allegations which are denied by the defendant's answer, would leave the petition stating a cause of action against the defendant."[22]

## III.    DISCUSSION

The parties each assert that the settlement agreement terms unambiguously support their favored interpretation, and that the Court should grant their respective motion.

Stratos says that the settlement agreement's language unambiguously states that Stratos must pay Candlewood only if Stratos completed a capital funding raise within eighteen months of the agreement date.  If Stratos did not successfully complete a capital raise, Stratos says, then the settlement agreement does not take effect and Candlewood receives the right to refile its original lawsuit.  Stratos says that as a matter of law, it has not breached the settlement agreement because there is no absolute obligation for it to pay merely because eighteen months has passed.[23]  Instead, there is an open factual question of whether a recent Stratos bridge loan qualifies as "the first round of capital" raised for Section 1(a)'s purposes.[24]

Plaintiff Candlewood also argues that the settlement agreement's language is unambiguous–albeit with a different interpretation that requires Stratos to make the settlement payment after eighteen months, regardless of whether Stratos has raised its first round of capital during that time.[25]  Candlewood says that this interpretation reflects the parties' intent to finally and permanently terminate their relationship.

---

[22] *United Food & Commercial Workers, Local 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2002) (*citing Iqbal*, 556 U.S. at 678)).
[23] Doc. 10-1, PageID #: 92-93.
[24] *Id.*, PageID #: 87-88.
[25] Doc. 14-1, PageID #: 136-37.

Case No. 1:23-cv-01351
GWIN, J.

"Under Ohio law, '[i]f a contract is clear and unambiguous, then its interpretation is a matter of law' for the court."[26] "Courts may undertake that review . . . at the motion to dismiss stage."[27] "If a court finds that the contract's language has one unambiguous meaning, therefore, the court may properly grant a motion to dismiss [or judgment on the pleadings] for a breach of contract claim."[28] If, however, the court finds that the contract's language is ambiguous, dismissal is not appropriate at that stage.[29]

To decide whether a contract is unambiguous, "a court must start with its language, giving the words 'their plain and ordinary meaning, unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.'"[30] "A contractual provision is clear when it can be given a definite legal meaning," and it is ambiguous "when the provision at issue is susceptible of more than one reasonable interpretation."[31]

As the settlement agreement is ambiguous and susceptible of more than one reasonable interpretation, both parties' motions must be denied.

Section 1(a)'s plain and ordinary meaning raises two plausible interpretations. Section 1(a) says that Stratos "will [p]ay . . . Candlewood . . .within ten (10) business days of the closing of the first round of capital . . ., which shall occur no later than eighteen (18) months after the Effective Date."[32] This latter clause imposes a time requirement. That is,

---

[26] *Wilkerson v. Am. Fam. Ins. Co.*, 997 F.3d 666, 668 (6th Cir. 2021) (*quoting Nationwide Mut. Fire Ins. Co. v. Gunman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995)).
[27] *Masco Corp. v. Wojcik*, 795 Fed. App'x 424, 431 (6th Cir. 2019)
[28] *Wilkerson*, 997 F.3d at 672 (*citing Masco Corp.*, 795 Fed. App'x at 431).
[29] *Cf. Electronic Merchant Systems LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) (*quoting Masco*, 795 Fed. App'x at 427) ("Where a dispute is based on the interpretation of a contract, and the contract's terms are clear, 'there is no issue if fact to be determined,' and thus dismissal on [Rule] 12(b)(6) grounds might be appropriate."
[30] *Masco Corp.*, 795 Fed. App'x at 427 (*quoting Laboy v. Grange Indem. Ins. Co.*, 41 N.E.3d 1224, 1227 (Ohio 2015)).
[31] *Id.* (citations and quotations omitted).
[32] Doc. 8-2, PageID #: 75.

Case No. 1:23-cv-01351
GWIN, J.

the agreement provides that a certain event must occur no later than eighteen months from the Effective Date, December 9, 2021.

However, it is not clear from Section 1(a)'s construction whether that certain event is the payment being made, as Candlewood suggests, or the first capital raise closing, under Stratos's interpretation.  The subordinate clause beginning with "which shall" could conceivably refer to either the settlement payment or the first capital raise closing.

Although each party insists otherwise, it would not be unreasonable for the parties, at the time of drafting, to have intended either an absolute payment obligation, permanently terminating their relationship, *or* an obligation contingent on a capital raise, leaving open the possibility of renewing their prior litigation.[33]  Neither interpretation strikes the Court as "manifestly absurd."[34]  Thus, at this point in the matter, Section 1(a) is ambiguous.

Examining the settlement agreement's other provisions supports this conclusion. "When a phrase can bear two meanings, Ohio courts expand their horizons by looking at the contract as a whole to see if one clear meaning best fits the context."[35]

The following settlement agreement provision is relevant to the discussion here:

"2.  Dismissal of the Litigation.  Within three (3) business days of the Effective Date and receipt of the Note, Candlewood shall file a notice of voluntary dismissal without prejudice in the Litigation (the "Dismissal").  Upon receipt of the Settlement Payment within 18 months from the date of the Settlement Agreement, Candlewood agrees that it will not bring suit against any Defendant regarding any matter related to the Dispute or the Litigation."[36]

---

[33] "Courts are required to interpret the contract in such a way as to give effect to the intention of the parties at the time the agreement was entered into, as evidenced by the provisions of the contract." *Watkins v. Brown*, 646 N.E.2d 483, 487 (Ohio Ct. App. 1994).

[34] *Masco Corp.*, 795 Fed. App'x at 427 (*quoting Laboy*, 41 N.E.3d at 1227).

[35] *Wilkerson*, 997 F.3d at 670 (*citing Dominish v. Nationwide Ins. Co.*, 953 N.E.2d 820, 822 (Ohio 2011)).

[36] Doc. 8-2, PageID #: 75-76.  The settlement agreement further provides for mutual release of the parties "[e]ffective upon (i) the execution by Stratos of the Note, (ii) the filing of the Dismissal by Candlewood, and (iii) the receipt by Candlewood of the Settlement payment."  *Id.*, PageID #: 76.

Case No. 1:23-cv-01351
GWIN, J.

The dismissal of the prior lawsuit without prejudice supports Stratos's interpretation. By requiring that the prior action be dismissed without prejudice, the settlement agreement suggests an intent that the standstill agreement acts as a litigation stay where the settlement payment isn't made.  This provision supports interpreting the settlement agreement as a "standstill" contract allowing Stratos time to raise the funds for the settlement payment and giving Candlewood an option to return to litigating the earlier case if Stratos fails to raise the capital and pay the $1.2 million.  Candlewood's interpretation requiring an absolute payment obligation would render this contingency provision superfluous.[37]

However, there is other evidence that both sides can use.  The settlement agreement's recital states that "the Parties . . . wish to resolve the Litigation and the Dispute in their entirety."  This may suggest that the parties did not contemplate that the settlement payment would be contingent on an uncertain future capital raise.

However, in contract language, using the term "wish" to express an intention to accomplish something typically does not create a mandatory obligation.  Contract language is often interpreted based on its clarity and specificity in creating enforceable obligations or rights.  The word "wish" generally conveys a desire or hope, rather than a firm commitment or requirement.

Looking at the contract as a whole does not resolve the parties' dispute over Section 1(a)'s interpretation.  The settlement agreement's ambiguity is best resolved at a later stage, when extrinsic evidence is available to provide context for the parties' intent at the time of drafting.[38]

---

[37] Ohio courts "refuse to read a clause out of the contract . . . when an alternative reading would give both clauses real effect."  *Wilkerson*, 997 F.3d at 671 (*citing Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 295 (Ohio 2011)).
[38] "If, however, the contract is facially ambiguous, the court may resort to evidence outside the contract to determine its meaning."  *Wilkerson*, 997 F.3d at 668 (*citing Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003)).

Case No. 1:23-cv-01351
GWIN, J.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Stratos's Partial Motion to

Dismiss and **DENIES** Plaintiff Candlewood's Motion for Judgment on the Pleadings.

IT IS SO ORDERED.


Dated: January 26, 2024                         *s/      James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE